# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 4, 2011

## STATE OF TENNESSEE v. DAVID STEVEN AUSTIN

**Direct Appeal from the Circuit Court for Fayette County**
**No. 6256      J. Weber McCraw, Judge**

**No. W2011-00031-CCA-R3-CD  - Filed December 27, 2011**

The defendant, David Steven Austin, was convicted by a Fayette County Circuit Court jury of driving under the influence, second offense, and was sentenced to eleven months and twenty-nine days, suspended to probation except for forty-five days. On appeal, he argues that the evidence was insufficient to sustain his conviction. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Matthew R. Armour, Somerville, Tennessee, for the appellant, David Steven Austin.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Matt Hooper, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

This case arises out of the defendant's being pulled over by police officers for suspected intoxication while driving a tractor on a public street. As a result, he was indicted on charges of driving under the influence; driving under the influence, second offense; driving on a revoked license; and driving while license revoked for DUI.

**State's Proof**

At trial, Lisa Knight testified that she was working the 11:00 p.m. to 7:00 a.m. shift at Gurkin's convenience store in Somerville on April 12, 2009, when the defendant came into the store. Knight recognized the defendant as he was a regular customer, coming in approximately three times a week in the six months prior to the incident. Knight recalled the defendant's arrival to the store that night:

> I don't know exactly what time it was but he pulled up and he was on a tractor and I looked out the window because at that time of the morning it just kind of startled me. He got off the tractor and come in the door and there's a counter in front going towards the registers and he was kind of having to hold on to that as he walked up . . . to the counter to purchase a pack of cigarettes.

She also observed that the defendant's speech was slurred, and he "was kind of stumbling." The defendant was also "fumbling" to find the correct amount of money to pay for the cigarettes.

Knight testified that, when the defendant left the store, she noticed that he "was kind of stumbling" as he mounted the tractor. Knight did not notice any lights on the tractor and was concerned with it being dark outside and also about "the way that he was acting," so she called the police. She had never made such a phone call concerning a customer before. On the other occasions that she had seen the defendant, he did not stumble, slur his speech, have trouble with his money, or have to hold himself up.

Sergeant Justin Powers testified that he was working as a patrolman with the Somerville Police Department in April 2009 and had been "trained in standardized field sobriety tests." On the night of the 12th, Sergeant Powers received a dispatch that a person who was possibly intoxicated was driving toward the courthouse. Soon after, Sergeant Powers and his partner, Officer Rockholdt, caught sight of the defendant. He observed that the defendant was "having trouble shifting gears" on the tractor. Sergeant Powers turned on his emergency lights and stopped the defendant at 3:23 a.m.

Sergeant Powers testified that he administered a horizontal gaze nystagmus test on the defendant and then called Deputy Dale Phillips of the Fayette County Sheriff's Department to the scene to conduct additional field sobriety tests. Sergeant Powers reached the opinion that the defendant "was extremely intoxicated on some sort of intoxicant" and was "completely unfit to operate a motor vehicle in this state." Sergeant Powers did not smell alcohol on the defendant, but the defendant informed him that he was taking

-2-

prescription medication. Sergeant Powers arrested the defendant and read him the implied consent form. The defendant agreed to a blood test. Blood was drawn at the local hospital and sent to the Tennessee Bureau of Investigation ("TBI") lab for testing. Two videotapes from the traffic stop were played for the jury.

On cross-examination, when asked whether he observed any erratic driving by the defendant before pulling him over, Sergeant Powers responded that "[t]he [defendant] was having trouble shifting gears" and that "didn't appear normal" to him. He acknowledged that the defendant responded appropriately to emergency lights and pulled over to the side of the roadway. Sergeant Powers recalled that, in his report, he noted that the defendant had slurred speech and was confused during questioning, specifically, the defendant told Sergeant Powers that "he was coming from Old Brownsville Road rather than from Gurkin's. And he also stated about his wife having a seizure and that he was going to Gurkin's to get her a pack of cigarettes." Sergeant Powers said that the defendant also "fumbl[ed]" with his wallet when getting his identification out. The defendant was cooperative throughout the investigation. In response to questioning, Sergeant Powers surmised that something other than an intoxicant, perhaps a medical condition, could possibly cause someone to act the way the defendant acted.

On redirect, Sergeant Powers recalled his prior interactions with the defendant. He noted that the defendant had "a natural limp but it wasn't nowhere near as extreme as" he exhibited the night he was arrested. Moreover, the defendant's speech was "more clear and concise" than exhibited that night.

Dr. Tonya Horton, a forensic scientist in the toxicology section of the TBI Crime Lab in Memphis, testified that she analyzed the blood sample collected from the defendant on April 12, 2009 at 5:30 a.m. The sample contained therapeutic amounts of Carisoprodol, also known as Soma, and its breakdown product of Meprobamate. The sample also contained trace amounts of Dihydrocodeinone, also known as Lortab, a pain medication. She explained that Soma is a muscle relaxant and, when it is metabolized, Meprobamate is formed and "is more of a sedative" that "remains in the body longer." She said that the combination of Dihydrocodeinone and Carisoprodol "can have enhanced and additive effect." Dr. Horton stated that the drugs in the levels found in the defendant's sample could cause an individual to be impaired. In fact, she noted that the labels contain a warning that the medications can impair a person's ability to operate a motor vehicle or heavy machinery. There was no alcohol present in the defendant's blood. On cross-examination, Dr. Horton admitted that the medications contained warnings about possible impairment but did not include a ban on driving.

Deputy Dale Phillips with the Fayette County Sheriff's Department testified that he was asked to respond to a scene involving the defendant on April 12, 2009. Deputy Phillips said that he had dealt with the defendant six or seven times prior to that night, and the defendant "wasn't talking right, . . . seemed to be confused. . . . [He] couldn't understand what [the defendant] was saying. [He had] never seen [the defendant] act like that before." Deputy Phillips conducted field sobriety tests on the defendant but, observing that the defendant "had no balance at all," determined that it would be unsafe to do any type of test requiring physical balance such as a one-leg stand and nine heel-to-toe step. Instead, he administered a "Modified Romberg" test, for which he instructed the defendant to tilt his head back slightly, keep his arms down to his side, close his eyes and count to thirty. Deputy Phillips had to stop the defendant approximately five seconds into the test because "[h]e was swaying back and forth [and] going backwards," and he thought the defendant was going to fall over.

Deputy Phillips testified that the defendant's eyes were "watery" and "glassy," and he had "slurred, slow speech." The defendant also "had no balance, no mechanical skills at all[.]" Although the defendant's breath had a faint sweet smell, Deputy Phillips could not place the aroma as that of alcohol. Deputy Phillips reached the conclusion that the defendant was "extremely inebriated . . . [and] should not have been operating anything at all, period." The video from Deputy Phillips' patrol car was played for the jury.

On cross-examination, Deputy Phillips recalled that the defendant told him that his wife had had a seizure. The defendant also told him that he was deaf in his left ear. Deputy Phillips acknowledged that deafness can affect a person's equilibrium, as relevant in the performance of certain field sobriety tests. He acknowledged that the defendant was able to recite the alphabet. The defendant informed Deputy Phillips about his involvement in a recent accident in which he was in a vehicle that struck a cow. However, Deputy Phillips did not see any evidence of head trauma in the defendant's eyes.

**Defendant's Proof**

The defendant testified that, at the time of the incident, he had prescriptions for three different medications. He explained his medical history, including his recent involvement in a car accident in which a cow was hit. Also, in 1991, he was involved in a collision with a semi-truck in which he suffered serious injuries. The lasting effects of those injuries were difficulty with balance and trouble with his right knee.

The defendant recalled the events of April 12, 2009. He said that his wife experienced an epileptic seizure and fixated on the last cigarette in his pack, which was normal post-seizure behavior. He drove his tractor to the store to buy more cigarettes and

-4-

was on his way home when he was pulled over. He described his mental state as "[e]xtremely nervous, wanting to get home to [his] wife" when the officers pulled him over. He said that he had no problem driving the tractor that night and noted that his headlights were on. He denied having taken any anti-anxiety medication. He said that the field sobriety tests were tests that he would never be able to perform given his physical condition.

Tina Austin, the defendant's wife, testified that she was with the defendant the day before the incident and that he had taken his medications several hours before leaving the house to purchase cigarettes for her.

Following the conclusion of the proof, the defendant was convicted of driving under the influence. He waived jury determination of second offense status.

## ANALYSIS

On appeal, the defendant challenges the sufficiency of the convicting evidence, arguing that the State failed to prove that he was impaired. He also seemingly suggests, without any support or attendant argument, that a tractor does not meet the definition of a motor vehicle for purposes of the DUI statute. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human

> atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated section 55-10-401(a)(1) provides, "It is unlawful for any person to drive . . . any automobile or other motor driven vehicle on any of the public roads and highways of the state, . . . while [u]nder the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system[.]" It is no defense to a charge of driving under the influence that the offender is a lawful user of the drugs. Id. § 55-10-402.

In the light most favorable to the State, the evidence shows that the defendant arrived at a gas station convenience store around 3:00 a.m. driving a tractor. The store clerk observed the defendant stumbling, slurring his speech, and fumbling with his money. When the defendant left the store, the clerk noticed that there were no lights on the tractor and, concerned with it being dark outside and about "the way that [the defendant] was acting," she called the police. Officers caught sight of the defendant and noticed that he was "having trouble shifting gears" on the tractor. Upon stopping the defendant and conducting field sobriety tests, the officers concluded that the defendant "was extremely intoxicated on some sort of intoxicant" and was "completely unfit to operate a motor vehicle in this state." The officers noted that the defendant slurred his speech, was confused during questioning, fumbled with his wallet when getting his identification out, and had no balance. The officers who both had previous encounters with the defendant, as well as the store clerk who had interacted with the defendant three times a week over the previous six months, recalled that the defendant acted distinctly different than on previous occasions.

In addition, a sample of the defendant's blood was taken that revealed the presence of a muscle relaxant and pain medication in therapeutic levels. Although all of the drugs tested within the therapeutic levels, Dr. Horton testified that the levels found in the defendant's sample could cause an individual to be impaired and that the medication labels warned against operating motor vehicles or heavy machinery. "'This Court has previously found sufficient evidence to sustain DUI convictions based on a defendant's behavior, prescription medications found in the defendant's systems, and expert testimony.'" State v.

Evelyn Cotton Self, No. M2009-00343-CCA-R3-CD, 2010 WL 4540235, at *5 (Tenn. Crim. App. Nov. 9, 2010), perm. to appeal denied (Tenn. Apr. 25, 2011) (quoting State v. Hollena Arlene West, No. M2008-02200-CCA-R3-CD, 2010 WL 2787827, at *4 (Tenn. Crim. App. July 13, 2010) (quoting State v. Donna Beatrice Kiser, No. E2005-02489-CCA-R3-CD, 2006 WL 2076341, at *6 (Tenn. Crim. App. July 27, 2006) (citing State v. Albert L. Norton, No. 03C01-9707-CR-00270, 1999 WL 508654, at *1-5 (Tenn. Crim. App. July 20, 1999) (concluding that there was sufficient evidence to sustain the defendant's DUI conviction where there was the presence of three types of pain medication, an inability to perform field sobriety tests, and expert testimony regarding the possible effects of the medication)).

It was the prerogative of the jury to discredit the defendant's explanation for the lack of ability to balance and motor skills he displayed the morning of the incident and accredit the testimony of the witnesses who testified that the defendant's functioning was different than normal. We conclude that the evidence is sufficient to support the defendant's conviction for driving a motor driven vehicle on a public roadway while under the influence.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE